ANDRE MIMS
REG. NO. 40565-054
FCI DANBURY
FEDERAL CORR. INSTITUTION
ROUTE 37
DANBURY, CT 06811

April 13, 2021

Ms. Angela E. Noble
Clerk of Court
U.S. District Court
Southern District of Florida
West Palm Beach Division
701 Clematis Street, Room 202
West Palm Beach, FL 33401



FILED BY _AET_ D.C.

APR 22 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

    RE:   *Mims v. United States*
           Crim No. 9:97-cr-08075-KMM-1

Dear Ms. Noble:

    Enclosed please find and accept for filing Movant's Supplemental Reply to Government's Response to Defendant's Motion to Reduce His Sentence. Please submit this document to the Court.

    Thank you for your assistance in this matter.

Sincerely,

*Andre Mims*

ANDRE MIMS
Appearing *Pro Se*

*Encl. as noted*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Crim No. 9:97-cr-08075-KMM-1

ANDRE MIMS,

  Movant,

v.

UNITED STATES OF AMERICA,

  Respondent.

_____/

## SUPPLEMENTAL REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO REDUCE HIS SENTENCE

COMES Movant, ANDRE MIMS ("Mims"), appearing *pro se,* and files a supplemental reply to Government's Response ("GR") to Mims' Motion Requesting Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for Compassionate Release ("Motion for Compassionate Release") as follows:

### PRELIMINARY STATEMENT

As a preliminary matter, Mims respectfully requests that this Court be mindful that *pro se* complaints are to be held "to less stringent standards than formal pleadings drafted by lawyers," and should therefore be liberally construed. *Caldwell v. Warden,* 748 F.3d 1090 (11th Cir. 2014); *Estelle v. Gamble,* 429 U.S. 97 (1976)(same); and

1

*Haines v. Kerner*, 404 U.S. 519 (1972)(same). Secondly, Mims adopts by reference and in whole his arguments previously filed in his Motion for Compassionate Release and initial Reply to Government's Response in Opposition to Defendant's Motion for Compassionate Release. See Docs. 406, 412.[1]

## GOVERNMENT'S RESPONSE

The GR is divided into three (3) main sections: (I) Procedural Background; (II) Argument; and (III) Conclusion. See Doc. 409. Mims will reply sequentially to each section of the GR as follows:

## I. PROCEDURAL BACKGROUND

The government in this main section of the GR gives a fair and accurate reading of the procedural background in this case. *Id.* at 1-4. Mims does not object to this section of the GR except for the government's contention that, "This Court lacks authority to grant this relief, and the motion should be denied". *Id.* at 4.

## II. ARGUMENT

This main section of the GR is divided into four (4) subsections: (A) The Pertinent Statute Directs that "Extraordinary and Compelling Circumstances" Allowing Compassionate Release Are Defined by the Sentencing Commission; (B) Exhaustion

---

[1] "Doc." refers to the Docket Report in the United States District Court for the Southern District of Florida, West Palm Beach Division in Criminal No. 9:97-cr-08075-KMM-1, which is immediately followed by the Docket Entry Number.

of Administrative Remedies; (C) The Governing Policy Statement Does Not Permit Relief Based on Disagreement With the Length of a Mandatory Sentence; and (D) Early Release is Also Inconsistent with the Factors in 18 U.S.C. § 3553. *Id.* at 4-11. Again, Mims will reply sequentially to each subsection of the GR as follows:

### A. The Pertinent Statute Directs that "Extraordinary and Compelling Circumstances" Allowing Compassionate Release Are Defined by the Sentencing Commission.

In this subsection of the GR, the government argues that:

> In Section 603(b) of the First Step Act, Congress added the italicized passage that permits a defendant, after denial of a request to BOP that it sponsor a request for compassionate release, or the passage of a specified period of time after seeking BOP's acquiescence, to himself move the court for relief. Previously, only BOP could initiate a motion for compassionate release. In other words, in amending Section 3582(c)(1)(A), Congress granted inmates a new procedural right: the opportunity to bring motions for compassionate release directly. In so providing, Congress did not alter the substantive criteria governing motions for compassionate release, which remain subject to binding guidance of the Sentencing Commission."

*Id.* at 6.

Following the warden's denial, Mims filed in this Court his pending motion under 18 U.S.C. § 3582(c)(1)(A)(i), arguing a sentence reduction was warranted by "extraordinary and compelling circumstances." Congress "'clarified' the judicially-created rule on stacking multiple" § 924(c) convictions such that if he had been sentenced after the First Step Act, he would have faced a mandatory sentence of

3

only 10 years, instead of 25 years imprisonment.

The Government relies on the proposition that Section 403 does not apply retroactively to a Section 924(c) sentence imposed prior to the passage of the FSA. However, Mims is not seeking a resentencing in accordance with Section 403; rather, he is asking this Court to consider the length of his sentence, his family circumstances, and his time served as "extraordinary and compelling reasons" for release under a different provision of the FSA. See, e.g., *United States v. Martin*, No. 08-20011, 2020 WL 4530447, at *1 (E.D. Mich. Aug. 6, 2020) (noting the Government's retroactivity arguments under *Richardson* are "well-taken, but [] not entirely dispositive" where a defendant sought relief under Section 3582 rather than a direct application of the FSA's amendments to Section 924(c), but declining to reach the issue as the defendant had failed to exhaust his administrative remedies); *United States v. Turns*, No. 2:99-cr-104-1, 2020 WL 2519710, at *4 (S.D. Ohio May 18, 2020) (same); see also *United States v. Moore*, --- F. Supp. 3d ---, 2020 WL 4926601, at *7 (noting that Congress chose not to make 924(c) retroactive, but suggesting that "the gross unfairness resulting from [Congress's] failure," when presented with other compelling circumstances, could warrant a sentence reduction).

The *O'Bryan* decision, among others, specifically addresses the other principal objection raised by the government here and in other § 924(c) compassionate release

4

cases, namely, that granting relief because of the transformative change in the § 924(c) sentencing scheme ushered in by the First Step Act would run counter to Congress's decision not to make that change retroactive. The Court reasoned:

> Notably, the only rationale offered by the government for opposing the relief sought is the contention that Congress did not specify that Section 403 of the FSA [amending 18 U.S.C. § 924(c)] should apply retroactively. ... However, this simply establishes that a defendant sentenced before the FSA is not automatically entitled to resentencing; it does not mean that the court may not or should not consider the effect of a radically changed sentence for purposes of applying § 3582(c)(1)(A). That is, the fact that the FSA changes in § 924(c) were not explicitly retroactive is "relevant [but] ultimately has little bearing" on whether the court is empowered to act under Section 3582, because "[i]t is not unreasonable for Congress to conclude that not all defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve some defendants of those sentences on a case-by-case basis."

*United States v. Maumau*, (No 20-4056) (10th Cir. April 1, 2021) at p. 7.

### B. <u>Exhaustion of Administrative Remedies</u>.

Mims filed a Motion for Compassionate Release through the BOP system on December 19, 2019 but the Warden M. Licon-Vitale denied his requests on January 7, 2020. See Doc. 409 at 7. Because the BOP declined to file such a motion on Mims' behalf, exhaustion of administrative remedies is not an issue in this case. See 18 U.S.C. § 3582(c)(1)(A).

As Mims' motion is properly before the Court, the next issue is whether Defendant is eligible for compassionate release. For Defendant to be eligible for

compassionate release, the Court, after considering the relevant factors set forth at 18 U.S.C. § 3553(a), must determine that "extraordinary and compelling reasons" warrant a reduction in Mims' term of imprisonment and that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

### C. <u>The Governing Policy Statement Does Not Permit Relief Based on Disagreement With the Length of a Mandatory Sentence</u>.

In his motion, Mims presents arguments addressing two of the four categories of "extraordinary and compelling reasons." His primary argument is that Congress's amendment of § 924(c) in the FSA constitutes an "extraordinary and compelling reason" for a sentence reduction. Specifically, Mims argues that his 410-month mandatory minimum sentence was the result of a "prosecutorial practice of 'stacking' § 924(c) charges in the same indictment without a previous § 924(c) conviction." As a result, Mims was subject to a mandatory minimum sentence of 300 months for two § 924(c) convictions, to run consecutive to his 110-month sentence for his Hobbs Act violations. Mims argues that his sentence is now 15 years longer than what Congress has now deemed an "adequate punishment for comparable § 924(c) conduct." He further argues that there is a gross disparity between the sentence that he received and the sentence he would now receive after the FSA amended § 924(c) in 2018. In

6

Response, the Government reiterates that Mims has failed to present arguments that comport with the § 1B1.13 policy statement, that a retroactive application of Section 403 of the FSA is inappropriate here. In supplement to his Reply to the GR, Mims emphasizes that a number of courts have reduced the sentences of individuals with pre-First Step Act 924(c) charges, as follows

*United States v. Haynes*, 456 F. Supp. 3d 496 (E.D.N.Y. 2020). Finding that First Step Act's elimination of "stacking" 18 U.S.C. § 924(c) convictions for sentencing purposes could be considered an extraordinary and compelling circumstance under 18 U.S.C. § 3582(c).

*United States v. Riley*, Case No. 2:12-cr-62 (D. Vt. May. 12, 2020). The Court considers Riley's circumstances under the catch-all provision in U.S.S.G. § 1B1.13 n.1(D). See, e.g., *United States v. Haynes*, No. 93 CR 1043 (RJD), 2020 WL 1941478, at *15 (E.D.N.Y. Apr. 22, 2020) (noting that a district court "has the authority to grant the relief sought in this case—namely, to determine what 'Other Reasons' (as that term is used in Application Note 1(D)) qualify as 'extraordinary and compelling' regardless of BOP's view on the matter and without having to await a someday-updating by the Commission of its unquestionably outdated policy statement"). The Sentencing Commission provided that "other reasons" may justify compassionate release, either alone or in connection with the Section 1B1.13 listed circumstances. Here, Riley's

family circumstances are considerable, and as he argues in his most recent motion, his medical condition adds significant weight to his request.

*United States v. Marks*, 455 F. Supp. 3d 17, 36 (W.D.N.Y. 2020) (holding that, while the retroactivity provisions of the FSA did not apply directly to defendant, the FSA still "evidences Congress's intent to mitigate the harsh and sometimes unjust effects of the sentencing laws"); *United States v. Redd*, 444 F. Supp. 3d 717, 722-24 (E.D. Va. 2020) (finding discrepancy between defendant's 603-month sentence — imposed under mandatory Guidelines and prior practice of "stacking" § 924(c) charges — and modern sentences for same conduct to constitute extraordinary and compelling reason justifying compassionate release); and *United States v. Curtis*, No. 03- CR-533, 2020 WL 1935543, at *3 (D.D.C. Apr. 22, 2020) (considering harshness of defendant's sentence in evaluating the § 3553(a) factors); *United States v. Urkevich*, 2019 WL 6037391 (D. Neb. Nov. 14, 2019) (concluding that the stacking provision of 18 U.S.C. § 924(c) constitutes an extraordinary and compelling reason for reduction in sentence after the First Step Act).

See also, *United States v. McCoy*, No. 20-6821 (4th Cir. Dec. 2, 2020). The defendants in these consolidated appeals were convicted of robberies and accompanying firearms violations under 18 U.S.C. § 924(c). At the time, sentences under § 924(c) were "stacked," which exposed the defendants to additional mandatory

minimums and led to sentences ranging from 35 to 53 years of imprisonment. After the defendants' convictions became final, Congress passed the First Step Act and ended sentence "stacking" under § 924(c). Today, the defendants' sentences would be dramatically shorter – in most cases, by 30 years – than the ones they received.

At the same time it shortened sentences under § 924(c), the First Step Act significantly expanded access to compassionate release under 18 U.S.C. § 3582(c)(1)(A). Prior versions of § 3582(c)(1)(A), which empowers courts to reduce sentences for "extraordinary and compelling reasons," had allowed review of sentences only at the request of the Bureau of Prisons ("BOP"). The First Step Act removed the BOP from that gatekeeping role, authorizing defendants themselves to file motions for sentence reductions.

Relying on both these First Step Act provisions, the defendants moved for reductions in their sentences under § 3582(c)(1)(A), resting their case for "extraordinary and compelling reasons" primarily on the length of their § 924(c) sentences and the disparity between their sentences and those that Congress deemed appropriate in the First Step Act. After considering each defendant's individual circumstances – including their youth at the time of the offenses, their lack of significant prior criminal history, their exemplary behavior and rehabilitation in prison, and their already-substantial years of incarceration – the district courts granted the

defendants' motions and reduced their sentences to time served.

The Fourth Circuit affirmed the judgments of the district courts. As the government emphasizes on appeal, § 3582(c)(1)(A) prohibits sentence reductions that are not consistent with "applicable policy statements issued by the Sentencing Commission." But contrary to the government's argument, treating the defendants' § 924(c) sentences as an "extraordinary and compelling" reason for release is not inconsistent with any "applicable policy statement" of the Sentencing Commission for the simple reason that the Commission has yet to issue a policy statement that applies to motions filed by defendants under the recently amended § 3582(c)(1)(A). Nor was it otherwise improper, we conclude, for the district courts to consider the First Step Act's declaration of the appropriate level of punishment under § 924(c) in assessing the defendants' cases, on an individualized basis, for compassionate release.

The Second Circuit's description of the First Step Act and its amendment of § 3582(c)(1)(A): an "incremental" change that does not mandate more lenient sentences across the board but instead gives new discretion to the courts to consider leniency. *Zullo*, 976 F.3d at 230. The district courts in these cases appropriately exercised the discretion conferred by Congress and cabined by the statutory requirements of § 3582(c)(1)(A). There is no error in their reliance on the length of the defendants' sentences, and the dramatic degree to which they exceed what Congress now deems

10

appropriate, in finding "extraordinary and compelling reasons" for potential sentence reductions. The courts took seriously the requirement that they conduct individualized inquiries, basing relief not only on the First Step Act's change to sentencing law under § 924(c) but also on such factors as the defendants' relative youth at the time of their offenses, their post-sentencing conduct and rehabilitation, and the very substantial terms of imprisonment they already served. Those individualized determinations were neither inconsistent with any "applicable" Sentencing Commission guidance nor tantamount to wholesale retroactive application of the First Step Act's amendments to § 924(c).

> D. **Early Release is Also Inconsistent with the Factors in 18 U.S.C. § 3553.**
>
>> 1. *Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct*

With respect to the need to avoid unwarranted sentencing disparities, Mims' sentence is grossly disparate relative to what a defendant today would receive for comparable conduct, received pursuant to the First Step Act by an increasing number of defendants who were sentenced before the passage of the First Step Act. Mims essentially argues that the unwarranted sentencing disparity factor must be determined only with reference to those comparably situated defendants who were sentenced at the

11

time of Mims' sentencing and those being sentenced today under a different sentencing structure. Mims' sentence in 2002 is now disparate relative to defendants sentenced after the passage of the FSA.

Mims is now, in effect, to be re-sentenced today, after the passage of the First Step Act; and the need to avoid unwarranted sentencing disparities is to be assessed at the time of his sentencing today relative to those comparable offenders who have been sentenced following the passage of the First Step Act. Nor does the First Step Act's lack of retroactivity justify withholding sentencing relief given the overall purpose of the First Step Act amendments, which expressly allowed for the possibility for a sentence reduction based on an individualized assessment of the § 3553(a) factors and other criteria.

Next, Mims argues that a reduction of sentence is warranted to avoid unwanted sentencing disparities, taking into consideration case-specific circumstances related to Mims' character, and in light of his post-sentencing rehabilitation.

See e.g., *United States v. Vazquez-Rivera*, 470 F.3d 443, 449 (1st Cir. 2006) (recognizing that "a district court may consider disparities among co-defendants in determining a sentence"); *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006) ("Although § 3553(a) does not require district courts to consider sentencing disparity among co-defendants, it also does not prohibit them from doing so."); *United States v.*

*Gomez*, 215 F. App'x 200, 202 (4th Cir. 2007) (implying that consideration of co-defendant disparities is allowed, but concluding that Gomez was not similarly situated to the co-defendant); *United States v. Bennett*, 664 F.3d 997, 1015 (5th Cir. 2011) ("[A]voiding unwarranted sentencing disparities among co-defendants is a valid sentencing consideration."), cert. denied, 11-9109, 2012 WL 733887 (Apr. 2, 2012); *United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007) ("A district judge, however, may exercise his or her discretion and determine a defendant's sentence in light of a co-defendant's sentence."); *United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) ("Pulley properly contends that § 3553(a)(6) does not allow unwarranted sentencing disparities between co-defendants." (citing *Statham*, 581 F.3d at 556; *Bartlett*, 567 F.3d at 908–09)); *United States v. Lazenby*, 439 F.3d 928, 933 (8th Cir. 2006) (invalidating a sentence that resulted in unwarranted disparities between the sentences of the defendant and less culpable members of related conspiracies); *United States v. Saeteurn*, 504 F.3d 1175, 1181–83 (9th Cir. 2007) (upholding as a legitimate generalized § 3553(a) consideration the district court's decision to compare defendant with his co-defendants and sentence him in accordance with his role); *United States v. Smart*, 518 F.3d 800, 804 (10th Cir. 2008) ("[A] district court may also properly account for unwarranted disparities between co-defendants who are similarly situated, and...the district court may compare defendants when deciding a sentence."); *United*

13

*States v. Zavala*, 300 F. App'x 792, 795 (11th Cir. 2008) ("It is not erroneous for the district court to have considered the 'unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct' when the statute specifically mandates such consideration."); *United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (considering and rejecting an argument that a disparity between co-defendants' sentences was unwarranted), cert. denied, 131 S. Ct. 586 (2010).

As previously mentioned in Mims' motion for compassionate release, he does not present a danger to the community as provided by 3142(g); 1B1.13(g). The facts of those detail were clearly laid out in Mims' motion. See Doc. 406 at 17-20. Additionally, Mims points that evidence of his post- sentencing rehabilitation warrants a reduction. *Id.* at 21-25. More so, his BOP record does not show that he is violent or a threat to public safety and records show that his recidivism risk level is low. *Id.* at 26.

If Mims were sentenced today, his sentence would be as follows: 110 months for the counts under §§1951(a), 922(g)(1), and 924(a)(2); 60 months for one count under §924(c); and 60 months for the other count under §924(c), all running consecutively, for a total term of 230 months' imprisonment. Mims has already served 284 months, more than enough reason to reduce his sentence to time served. The § 3553(a) factors do not counsel for a sentence outside this range, and the type of

14

variance originally found by the Court may have been appropriate when the original range was so much higher, but not now. This sentence also avoids unwarranted sentencing disparities.

### III. CONCLUSION

In this main section of the GR, the government asks the Court deny Mims' motion. However, for the above and foregoing reasons, Mims' has already served a sentence almost five years longer than what would be imposed today for the same conduct. Remaining in prison would only exacerbate the sentencing disparity created by a sentencing practice which Congress ended with the FSA by clarifying its intent from the beginning. Mims' prays that this Court finds that the § 3553(a) factors weigh in favor of reducing his sentence to time served.

Respectfully submitted,

Dated: April 13, 2021.

*André Mims*
ANDRE MIMS
REG. NO. 40565-054
FCI DANBURY
FEDERAL CORR. INSTITUTION
ROUTE 37
DANBURY, CT  06811
Appearing *Pro Se*

## **CERTIFICATE OF SERVICE**

     I hereby certify that on April 13, 2021, a true and correct copy of the above and foregoing Supplemental Reply to Government's Response to Defendant's Motion to Reduce His Sentence was sent via U. S. Mail, postage prepaid, to Jennifer A. Luce, Special Assistant U.S. Attorney at U.S. Attorney's Office, 99 NE 4th Street, Miami, FL 33132.

*Andre Mims*
ANDRE MIMS

To: Ms Angela E. Noble
Clerk of The Court
U.S. District Court
Southern District of Florida
701 Clematis Street, Room 202
West Palm Beach, FL 33401

FEDERAL CORRECTIONAL INSTITUTION DANBURY
33 1/2 PEMBROKE ROAD, DANBURY CT, 06811
DATE 4/18/21
THE ENCLOSED LETTER ... THROUGH
SPECIAL ... 
THE LETTER ... INSPECTED
IF THE ... GLOVER
W... YOU
MAY ... FURTHER
IN ... CENTER
ENCL ...
TO ...
THE ...